**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TIFFANY M. BURNETT,

               Plaintiff,

v.

ASTRAZENECA
PHARMACEUTICALS LP,

               Defendant.

Civil Action No. 22-cv-03335-LWW

Dated: December 9, 2024

**<u>MEMORANDUM OPINION</u>**

Before the Court are the following motions: (1) Defendant AstraZeneca Pharmaceuticals LP's ("Defendant" or "AstraZeneca") Motion for Summary Judgment; (2) Defendant AstraZeneca's Motion to Strike Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to AstraZeneca's Motion for Summary Judgment; (3) Plaintiff Tiffany M. Burnett's ("Plaintiff" or "Burnett") Motion to Extend the Deadline to File Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment; and (4) Defendant AstraZeneca's Motion to Exclude Plaintiff's Expert Thomas S. Tilghman. The motions are fully briefed. Having reviewed the submitted materials, the Court finds this matter is appropriate for resolution without oral argument. D. Md. Local R. 105.6. For the reasons set forth below, Defendant's Motion to Strike is GRANTED. Plaintiff's Motion to Extend the Deadline is DENIED. Defendant's Motion for Summary Judgment is GRANTED. Defendant's Motion to Exclude Expert is DENIED as moot.

## BACKGROUND

Plaintiff holds a B.S. in Chemistry and an M.S. in Pharmacy from Temple University. Compl. ¶ 11, ECF No. 1. In 2013, Plaintiff, an African American woman, was hired by Defendant from Medimmune, a subsidiary of the Defendant, where she had been a Corporate Project Manager. Id. ¶ 12. AstraZeneca appointed Burnett as an Associate Director of Global Product Management in its oncology global medicine division, starting October 21, 2013, with a salary of $132,000 in the "F" pay band. Id. ¶¶ 12–13. Burnett's responsibilities included managing the transition of oncology products like LUMOXITI™ and IMFINZI™ from Medimmune to AstraZeneca. Id. ¶ 14.

In 2015, Burnett's salary was increased to $135,000, and she received a $55,000 bonus. Id. ¶ 24. In 2018, Burnett expressed concerns to her supervisor about her performance evaluation and lack of access to training relevant to her role. Id. ¶ 31. Burnett then filed an ethics complaint ("Ethics Complaint") regarding pay inequity and other concerns with management in April 2018 with Defendant's human resources ("HR") department. Id. ¶ 34. Burnett alleged in her Ethics Complaint that requests for pay band adjustments and promotional opportunities were dismissed and that her physical workspace was reassigned away from her team Id. ¶¶ 31–34. In response to Burnett's concerns, AstraZeneca conducted a review, concluding that her pay was appropriate for her position. Mem. of Law in Supp. of Def. AstraZeneca Pharmaceuticals LP's Mot. for Summ. J. ("Def.'s Mot."), ECF 40 at 7.

In July 2019, AstraZeneca reorganized its oncology business unit, requiring Burnett and others to reapply for their positions. Compl. ¶ 40. Burnett applied for but

was not selected for the Director of Program Management role. Id. ¶¶ 43, 44. On August 30, 2019, AstraZeneca gave Burnett sixty days to either accept a severance package or secure another role within the company. Id. ¶¶ 44, 46. On September 9, 2019, Burnett sent an email to the general counsel of AstraZeneca ("General Counsel Complaint") to raise the pay equity complaints and the lack of a resolution from the Ethics Complaint. Id. ¶ 48. Burnett's separation plan indicated that her employment would be terminated on November 1, 2019. Id. ¶ 53. Through counsel, Burnett and AstraZeneca executed an agreement on October 30, 2019, to maintain the status quo for the duration of the agreement ("Tolling Agreement"), which Burnett understood to mean she could continue to work beyond the November 1 termination date. Id. ¶ 54. On November 4, after arriving to work, an HR representative informed Burnett that she had been terminated and escorted her out of the building. Id. ¶ 58. Burnett's employment was terminated on November 4, 2019. Id.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Matherly v. Andrews, 859 F.3d 264, 279 (4th Cir. 2017). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." Masson v. New Yorker Mag., Inc., 501 U.S. 496, 520 (1991). If the movant meets this burden, the burden then shifts to the nonmoving party to identify evidence that demonstrates the

existence of a genuine dispute of material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986).

In labor cases, specifically in "'Title VII cases, courts should be wary of summary judgment motions because a party's intent is often the crucial element in such cases.'" Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d. 847, 855 (D. Md. 2000) (quoting Johnson v. Runyon, 928 F. Supp 545, 579 (D. Md. 1996)). Additionally, under the Equal Pay Act ("EPA"), 29 U.S.C. § 216(B), "an employer may be entitled to summary judgment on an EPA claim if the employer establishes an affirmative defense as a matter of law, [although] the burden on the employer necessarily is a heavy one." U.S. Equal Emp. Opportunity Comm'n v. Maryland Ins. Admin., 879 F.3d 114, 120 (4th Cir. 2018). However, when a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). A party will succeed on a motion for summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). Accordingly, the Court will address each of Plaintiff's claims, examining the record taken as a whole and viewing the facts in the light most favorable to her.

## DISCUSSION

### I.    Motion to Strike

First, the Court must address AstraZeneca's motion to strike Plaintiff Burnett's untimely filing of her response to Defendant's motion for summary judgment, and

Civil Action No. 22-cv-03335-LWW                                            Page 5

Plaintiff's motion for an extension of time to file the memorandum. In deciding to grant

an extension, "[a] district court may extend a deadline for good cause if the party can

show that the delay was 'because of excusable neglect.'" Agnew v. United Leasing

Corp., 680 F. App'x 149, 155 (4th Cir. 2017) (quoting Fed. R. Civ. P. 6(b)(1)(B)).

Excusable neglect is a high bar for a party because it "'is not easily

demonstrated, nor was it intended to be.'" Id. (quoting Thompson v. E.I. DuPont de

Nemours & Co., 76 F.3d 530, 534 (4th Cir. 1996)). A court must consider four factors in

determining if a party's neglect is excusable: (1) "the danger of prejudice to the

[opposing party];" (2) "the length of the delay and its potential impact on judicial

proceedings;" (3) "the reason for the delay, including whether it was within the

reasonable control of the movant;" and (4) "whether the movant acted in good faith." Id.

(citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship, 507 U.S. 380, 395

(1993)). When weighing the factors, "[t]he reason for the delay is the 'most important

factor' in determining whether counsel's neglect is excusable." Levy v. Green, No. 8:18-

cv-01291, 2024 WL 3090367, at *10 (D. Md. June 21, 2024) (quoting Rothenberg v.

Marriott Int'l, Inc., No. CIV.CCB-08-173, 2008 WL 687033, at *1 (D. Md. Feb. 29,

2008)).

In Agnews, a twelve-day delay in filing a summary judgment opposition brief due

to a mistaken calendared date was held by the Fourth Circuit to heavily weigh against

granting an extension because (1) the twelve days was considered lengthy enough a

delay and could potentially impact judicial proceedings; and (2) the delay was not

explained to be anything other than a mistake, which was not excusable neglect. 680 F.

App'x at 155; see also Thompson, 76 F.3d at 535 (explaining that "run-of-the-mill inattentiveness by counsel" is not excusable neglect).

Here, Plaintiff filed a cover opposition, a statement of material facts in dispute, exhibits, and a proposed order on the required date, March 15, 2024. See generally ECF No. 46. However, three days after the deadline, Plaintiff filed her memorandum in support of Plaintiff's opposition to Defendant's motion for summary judgment without seeking consent from Defendant. ECF No. 47. The only explanation for the failure to timely file was that it was inadvertent and she did not "realize[] the memorandum ha[d] not been filed" until three days later. ECF No. 48 ¶ 6. The length of the delay is short, and the Court does not believe that Plaintiff's counsel acted in bad faith or prejudiced Defendant. However, the reason for the delay is the most important factor. Levy, 2024 WL 3090367, at *10. Plaintiff offers no justifiable reason for the delayed filing beyond "run-of-the-mill inattentiveness" that cannot survive an excusable neglect analysis. Thompson, 76 F.3d at 535. The Court is sympathetic to counsel's position for her client, but "a district court should find excusable neglect only in the extraordinary cases where injustice would otherwise result." Levy, 2024 WL 3090367, at *10 (emphasis in original) (quoting Thompson, 76 F.3d at 534).

Therefore, AstraZeneca's motion to strike Plaintiff's memorandum of law in support of her opposition to Defendant's motion for summary judgment is granted. Plaintiff's motion to extend the deadline to file a memorandum in support of her opposition to Defendant's motion for summary judgment is denied. The Court will not

strike Plaintiff's timely filed cover opposition, statement of material facts in dispute, exhibits, or proposed order.[1]

## II.    Motion for Summary Judgment

The Court now turns to the motion for summary judgment based on claims of discrimination and retaliation under the EPA, the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 et seq., Chapter 27 of the Montgomery County Code, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 43 U.S.C. §§ 2000e–2000e-17. The first claim of discrimination, unequal pay, is examined under the EPA, the FEPA, and Title VII. Plaintiff's additional discrimination claims fall exclusively under a Title VII and FEPA analysis.

### A.    Plaintiff's Discrimination Claim of Unequal Pay Fails.

Plaintiff first brings a claim of discrimination in violation of the EPA, the FEPA, and Title VII, alleging that Defendant discriminated against Plaintiff on the basis of race and/or gender. Compl. ¶¶ 62, 70, 77, 112.

To establish a prima facie case of discrimination under the EPA, Plaintiff bears the burden of showing that: (1) he or she was paid less than at least one employee of the opposite sex; (2) the jobs of the plaintiff and comparator employee of the opposite sex required equal skill, effort, and responsibility; and (3) Plaintiff and the comparator employee of the opposite sex performed the jobs under similar working conditions in the

---

[1] AstraZeneca also moved to strike Plaintiff's memorandum in opposition to Defendant's motion for summary judgment for exceeding the permitted number of pages. This issue is now moot.

same establishment. 29 U.S.C. § 206(d)(1); Corning Glass Works v. Brennan, 417 U.S 188, 195 (1974); see also Wheatley v. Wicomico County, Maryland, 390 F.3d 328, 332 (4th Cir. 2004). Plaintiff need not prove that the employer acted with discriminatory intent, nor must she prove that the compared work is identical but must show that all three elements are met. See Maryland Ins. Admin., 879 F.3d at 120; see also Kennedy v. Virginia Polytechnic Inst. & State University, 781 F. Supp. 2d 297, 300 (W.D. Va. 2011) ("[I]t is not necessary for a plaintiff to prove that the work of her comparators is identical in every aspect– 'equal work' does not mean 'identical work.'").

Once a plaintiff has made the initial showing of an EPA claim, the burden shifts to the defendant to prove by a preponderance of the evidence that the wage difference was justified by an affirmative defense statutorily set forth in 29 U.S.C. § 206(d)(1). Maryland Ins. Admin., 879 F.3d at 120; Strag v. Bd. of Trustees, Craven Cmty. Coll., 55 F.3d 943, 948 (4th Cir. 1995). The four affirmative defenses that provide that differential pay is legal are when the difference is made pursuant to: (1) a seniority system; (2) a merit system; (3) "quality of work" system; or (4) other gender-neutral standard. Strag, 55 F.3d at 948 (citing 29 U.S.C. § 206(d)(1)).

The Court therefore turns to consider the issue of whether Plaintiff met the first prong of an EPA claim and met her burden of a prima facie showing of discrimination under the EPA. Plaintiff has submitted undisputed facts that she was paid less than multiple male comparators: Jeff Hanten, Parker Holmes, Bill Izzo, Chris Veale, Khary Burke, Damien Carter, Juan Carlos Cabral Diaz, and Francis Gauthier. Compl. ¶¶ 70, 77; Def.'s Ex. 34 at 176:21–177:19, ECF No. 39-36. The prima facie burden therefore

rests on whether the male comparator employees' jobs required equal skill, effort, and responsibility under similar working conditions in the same establishment. Corning Glass Works, 417 U.S at 195.

Plaintiff's role at the company was "Global Project Manager" with the "Associate Director of Global Project Management" job profile and was placed Global Career Level F of AstraZeneca's employment levels. Compl. ¶ 12; Ans. ¶ 13, ECF No. 10; Def.'s Ex. 6 at AZ_BURNETT_003322, ECF No. 39-8. This position was classified under the "Commercial" team, focused on global brand strategy; as opposed to the "Research and Development" team, which focused on science-based product development. Def.'s Ex. 1 ¶ 5, ECF No. 39-3. The record indicates that project managers in Research and Development roles have a scope of responsibilities that require the utilization and in-depth knowledge of science to assist in drug development, regulatory affairs, and biostatistics. Id. ¶ 23. On the other hand, the Commercial division of roles focus on marketing, brand strategy, and implementation. Id. ¶ 24. The first four comparators, Jeff Hanten, Parker Holmes, Bill Izzo, and Chris Veale, were all in the more science-based Research and Development division. Def.'s Ex. 7, ECF No. 39-9; Def.'s Ex. 16 ¶ 25, ECF No. 39-18.

Plaintiff's position listed requirements and expectations that the role would "[channel] AstraZeneca's scientific capabilities, [and] … [bridge] science and commercial, integrating corporate, portfolio, therapy area and product strategies, providing strategic direction from early-stage research through to commercialization." Pl.'s Ex. Q, ECF No. 46-17; Pl.'s Ex. R, ECF No. 46-18; Def.'s Ex. 9, ECF No. 39-11.

The description additionally provides that the role required "[the] ability to interpret and communicate technical information into business language and in alignment with AstraZeneca's business." Pl.'s Ex. Q. While Plaintiff's role description does discuss a need to "channel AstraZeneca's scientific capabilities," no record evidence indicates that the roles within the Research and Development teams were "similar jobs" with equal "skill" or "responsibility," as required for a prima facie burden for an EPA claim. See Corning Glass Works, 417 U.S. at 195. Rather, the record indicates that Plaintiff's science background was used for practical applications in her position. Pl.'s Ex. C ¶¶ 24, 33, ECF No. 46-3; Pl.'s Ex. I at 8, ECF No. 46-9. For example, Plaintiff's performance award in 2017 was given for her work with marketing materials, not scientific product development. Pl.'s Ex. C ¶¶ 38–39.

Plaintiff's focus on marketing and strategy in her position with the Commercial division is a clear distinction from roles in the Research and Development division, which focused on scientific product development. Such a distinction leads to the conclusion that roles between the two teams were significantly different. Plaintiff herself stated that her job duties were "no longer the same" as one comparator, that she "had different job duties" than another comparator, and "served two different teams" with another. Def.'s Ex. 34 at 366:19–368:21, 384:5–10. Therefore, Plaintiff has not sufficiently asserted factual evidence for purposes of summary judgment that the comparators' jobs on the Research and Development division (i.e., Jeff Hanten, Parker Holmes, Bill Izzo, and Chris Veale) "required equal skill, effort, and responsibility, and that the plaintiff and the comparator employee of the opposite sex performed the jobs

under similar working conditions in the same establishment," as necessary to meet the prima facie burden of an EPA claim. 29 U.S.C. § 206(d)(1).

The comparators Khary Burke, Damien Carter, and Juan Carlos Cabral Diaz were on the Commercial division's Immuno-Oncology ("IO") Marketing Team, like Plaintiff. Def.'s Ex. 7; Def.'s Ex. 16 ¶ 33. However, "it is not enough to simply show that the comparators hold the same title and the same general responsibility as the plaintiff. They must have virtually identical jobs." Evans v. Int'l Paper Co., 936 F.3d 183, 196 (4th Cir. 2019) (first citing Spencer v. Virginia State Univ., 919 F.3d 199, 204 (4th Cir. 2019); then citing Wheatley, 390 F.3d at 332–33).

The three comparators' roles in the marketing division included developing marketing strategy for a particular drug, working under the guidance of such a developer, and creating marketing materials for such a strategy. Def.'s Ex. 16 ¶¶ 34–38. Plaintiff, however, served a cross-functional role, facilitating execution of development among the many teams. Id. ¶¶ 14, 15, 17. Plaintiff, herself, asserted that it is "problematic" to "[c]ompar[e] [her] to the Brand Director of Marketing role … because the jobs are different and so is the skillset." Def.'s Ex. 52 at 3, ECF No. 39-54.

To support her claim that the other Commercial division comparators had similar roles, Plaintiff states that they were "equally important to the company." Def.'s Ex. 34 at 367:14–19. The Fourth Circuit has consistently held that "jobs with the same title and only vaguely corresponding responsibilities" cannot be considered equal, and that if a plaintiff fails to meet her burden of showing that jobs are equal, it is fatal. Spencer, 919 F.3d at 204. The Court does not doubt that Plaintiff was entrusted with a great amount

of responsibility. However, Plaintiff has not established that her role was substantially similar to that of her comparators, as required for her prima facie burden under the EPA, to show a genuine dispute of material facts. Summary judgment is therefore proper.[2]

Similar to the EPA claim of pay discrimination, Plaintiff also brings the same claim of pay discrimination under the FEPA and Title VII.[3] Title VII states that an employer will not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

If a Title VII prima facie case of wage discrimination is based on comparators, the plaintiff must show that she is paid less than the comparator in a "similar" job under Title VII, rather than an "equal" job under the Equal Pay Act.  Spencer, 919 F.3d at 207. Additionally:

> [w]hile there is no bright-line rule for what makes two jobs "similar" under Title VII, courts consider "whether the employees (i) held the same description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education,

---

[2] The final comparator, Francis Gauthier, was a contracted employee from a staffing firm and thus was not similarly situated for a pay discrimination claim. See 29 U.S.C. § 206(d).

[3] The FEPA is the state law analogue of Title VII and is therefore analyzed the same as Title VII. Arsham v. Mayor of Baltimore, 85 F. Supp. 3d 841, 849 (D. Md. 2015); Schmidt v. Town of Cheverly, MD., 212 F. Supp. 3d 573, 579 (D. Md. 2016); Bryan v. Prince George's Cty., Md., No. CIV.A. DKC 10-2452, 2011 WL 2650759, at *8 (D. Md. July 5, 2011), aff'd, 484 F. App'x. 775 (4th Cir. 2012). As such, Plaintiff's Title VII claims and FEPA claims will be analyzed together for purposes of this memorandum opinion.

and other qualifications—provided the employer considered these factors
in making the personnel decision."

Id. (quoting Bio v. Fed Express Corp., 424 F. 3d 593, 597 (7th Cir. 2005)).

Despite the "similar" standard being less demanding than the "equal" standard,
the plaintiff must still "provide evidence that the proposed comparators are not just
similar in some respects, but 'similarly situated in all respects.'" Spencer, 919 F.3d at
207–08 (emphases in original) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th
Cir. 1992)). Broad generalizations will not survive a Title VII or EPA claim. Id. at 208. As
discussed in the EPA evaluation, Plaintiff has not shown that her or her male
comparators performed similar positions.[4]

## B.     Plaintiff's Other Discrimination Claims Under Title VII and the FEPA Fail.

In addition to the unequal pay discrimination claim brought under the EPA, the
FEPA, and Title VII, Plaintiff asserts additional discrimination claims that are brought
under Title VII and the FEPA, which are interpreted under the same analysis. Here,
Plaintiff asserts claims based on sex, race, and intersectional discrimination. Compl. ¶¶
67, 74, 79. It is undisputed by the parties that Plaintiff is part of protected classes as an
African American woman. It is also undisputed that Plaintiff performed her work

---

[4] In addition to the pay difference discrimination claim, Plaintiff also alleges under Title
VII that she was denied the full value of a 2017 bonus to offset the pay disparity.
However, she provides no facts to support this claim and the record indicates that the
bonus was within the recommended bonus range. Def.'s Ex. 61, ECF No. 43. Nor does
Plaintiff provide any support that the alleged denial of the value of the bonus was done
with discriminatory intent, as required under Title VII.

satisfactorily. Ultimately her claims are as follows: she was paid lower wages, "place[ed] [] in a lower pay band notwithstanding the fact that she was performing duties that warranted placement in the same pay band as her male colleagues," denied professional development training, denied promotional opportunities, given less time to find a new position, and passed over for a position she was qualified for in comparison to male employees and non-African American employees. Compl. ¶¶ 70, 77, 83, 84.

A plaintiff may present a Title VII claim via "two avenues of proof": (1) direct evidence of outright discrimination; or (2) using the McDonnell Douglas framework. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004). Direct evidence of outright discrimination is evidence of conduct or statements that both reflect the alleged discriminatory attitude and have a direct nexus to the employment decision. Walton v. Harker, 33 F.4th 165, 176–77 (4th Cir. 2022). Direct evidence, if believed, must clearly show the discriminatory intent that caused the adverse employment decision "'without any inference or presumptions.'" O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1998) (quoting Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir.1993)). Because direct evidence of outright discrimination is rarely available for plaintiffs, which Burnett here has not provided, plaintiffs may alternatively present a Title VII claim under the McDonnell Douglas framework.

Under the McDonnell Douglas disparate treatment model of a Title VII claim, the plaintiff must establish that: "(1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) an adverse employment action occurred; and (4)

the circumstances suggest an unlawfully discriminatory motive." <u>Spencer</u>, 919 F.3d at

207 (first citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802–04 (1973); then

citing <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

      If the plaintiff can establish a prima facie case of discrimination, the burden shifts

to the defendant to advance a nondiscriminatory reason for the adverse action. <u>St.</u>

<u>Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993). If the employer proffers a non-

discriminatory explanation, the burden then shifts back to the plaintiff to show that the

proffered reason is but a pretext for impermissible discrimination. <u>See</u> <u>St. Mary's Honor</u>

<u>Center</u>, 509 U.S. at 507–08. A trier of fact's "rejection of the defendant's proffered

reasons will permit that trier of fact to infer the ultimate fact of intentional discrimination."

<u>Id</u>. at 511.

      Plaintiff's Title VII and FEPA discrimination claims are analyzed as follows:

         1.  <u>Plaintiff's claim that she was passed over for a position for which</u>
             <u>she was qualified</u>

      Plaintiff alleges that AstraZeneca discriminated against her under Title VII

because she was "passed over for a position for which she was qualified and which was

given to a male employee with significantly less experience and qualifications." Compl.

¶ 70.

      A plaintiff may establish a prima facie case of discriminatory failure to hire under

Title VII by showing that she: "(1) is a member of a protected category; (2) applied for

the position in question; (3) was qualified for the position; and (4) was rejected under

circumstances giving rise to an inference of unlawful discrimination." <u>Langerman v.</u>

<u>Thompson</u>, 155 F. Supp. 2d 490, 495 (D. Md. 2001); <u>Brown v. McClean</u>, 159 F.3d 898,

902 (4th Cir. 1998). The fourth prong is most easily satisfied by "showing that someone outside of the plaintiff's protected group ultimately was selected for the position." Langerman, 155 F. Supp. 2d at 495. Once the plaintiff establishes the prima facie case, the burden then shifts to the defendant to advance a nondiscriminatory reason for the failure to hire. Id. The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the reasons offered by the defendant were merely pretext for discrimination. Id.

Here, Plaintiff is a member of two protected classes as an African American woman. Ans. ¶ 11. It is also undisputed that Plaintiff applied for the position of Director of IO Project Management. Def.'s Ex. 1 ¶¶ 40–41. With respect to the third prong, Plaintiff previously received positive evaluations for her role within the company and received awards for her performance in previous roles. Compl. ¶ 15. The issue, therefore, is whether the fourth prong is met that she "was rejected under circumstances giving rise to an inference of unlawful discrimination." Langerman, 155 F. Supp. 2d at 495.

Plaintiff was not selected for the position of Director of IO Project Management; the position instead went to a Caucasian male, Clark Undem ("Undem"). Compl. ¶ 44; Def.'s Mot. at 27. Because the position went to a member of an unprotected class, Plaintiff has met her prima facie burden and the burden shifts to Defendant to advance a nondiscriminatory reason.

Defendant provides that Plaintiff was not selected for the role for:

a number of legitimate and non-discriminatory reasons, including that: (1) she "sent the case after the deadline"; (2) her presentation's "content [was] lacking"; (3) her presentation used "old templates … without any detail on the assigned case"; (4) "during the interview she struggled to communicate specific accomplishments and deliverables in 2019"; and (5) she "failed to communicate clearly how she had successfully influenced and accomplished results through others."

Def.'s Mot. at 27 (quoting Def.'s Ex. 23, ECF No. 39-25).

These reasons do present non-discriminatory purposes for choosing another candidate. See Hux v. City of Newport News, 451 F.3d 311, 319 (4th Cir. 2006) ("Interviews are an important tool … and [the Court] may not lightly overturn the reasonable conclusions an employer reaches after actually meeting with a candidate face-to-face."). The burden shifts to Plaintiff again to explain that this is merely a pretext for discrimination.

Once the burden has been shifted back to the plaintiff, the plaintiff is then required to prove that the defendant's proffered non-discriminatory reason was merely a pretext for discriminatory actions. In order to establish that the proffered non-discriminatory reason was merely pretextual the plaintiff must show "both that the reason was false, and that discrimination was the real reason." Alston v. Maryland Dep't of Health, No. CV TDC-18-2361, 2023 WL 2585532, at *5 (D. Md. Mar. 21, 2023) (emphasis in original), aff'd sub nom. Alston v. Maryland Dep't of Health, Div. of Cost Acct. & Reimbursements Cent. Off., No. 23-1388, 2023 WL 5526593 (4th Cir. Aug. 28, 2023) (quoting Adams v. Tr. Of the Univ. of N.C.-Wilmington, 640 F. 3d 550, 560 (4th Cir. 2011)).

In support of a showing of pretext, Plaintiff provides that Undem had only six years of experience, rather than the seven years required in the job description; Undem did not have the previous experience with the listed "key activities"; and that Undem did not receive a higher performance rating before receiving the position. Pl.'s Ex. JJ, ECF No. 46-36; Pl.'s Ex. UU at AZ_BURNETT_001357, ECF No. 46-47; Pl.'s Ex. Z, ECF No. 46-26; Def.'s Ex. 43, ECF No. 39-45. The Fourth Circuit has held, however, that a plaintiff "may not choose the criteria by which an employer makes a promotion decision." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 270 (4th Cir. 2005). Therefore, it is not proper for the Court to determine the criteria that an employer must use in making a promotion determination without a showing of disputed material fact indicating the existence of discriminatory intent underlying such a determination.

Even viewed in the light most favorable to Plaintiff, her claim fails because Plaintiff has not met her burden of demonstrating in the record a material dispute of fact tending to show that discriminatory intent was the true reason for Defendant's selection of another candidate. Rather, the record reflects that when asked if there is any evidence of discrimination other than the decision to hire "a white man, who in [Plaintiff's] estimation is less qualified," Plaintiff responded, "[w]hat I know is that the person that ultimately assumed the role did not meet the qualifications of the job description." Def.'s Ex. 34 at 263:1–13. Further, in Plaintiff's Answer to Defendant's Interrogatories, when asked to identify the AstraZeneca employees whom Plaintiff believes discriminated against her, she did not identify any members of the interview panel with decision-making authority. Def.'s Ex. 35 at 11, ECF No. 39-37. Fatally, "it is

the <u>decision maker's intent</u> that remains crucial." <u>Merrit v. Old Dominion Freight Line,</u>

<u>Inc.</u>, 601 F.3d 289, 300 (4th Cir. 2010) (emphasis added). As Plaintiff has not met her

burden of showing disputed material facts that the proffered reasons were mere pretext

for discriminatory intent, summary judgment is granted for Defendant.

2.  <u>Plaintiff's claim that she was placed in lower job level band</u>

Plaintiff's next claim is that she was discriminated against as an African American

woman because her position, a Global Program Manager, was improperly classified as

an F-Level job profile, rather than a G-Level job profile. Plaintiff largely supports this

allegation with facts explaining why she should have been classified at G-level, noting

her background and workload. Plaintiff fails, however, to make a prima facie showing

that discriminatory intent was present in improperly classifying her job level as a

member of a protected class, which is required to permit the trier of fact to find

discrimination. <u>Dugan v. Albermarle Cnty. Sch. Bd.</u>, 293 F.3d 716, 722 (4th Cir. 2002).

Specifically, Plaintiff does not provide any factual allegation of discriminatory

intent. In Plaintiff's Answer to Defendant's Interrogatories, when asked to identify

AstraZeneca employees who Plaintiff believed discriminated against her, she did not

identify the person who was responsible for assigning the role to the job level. Def.'s Ex.

35 at 11. Further, Plaintiff's expert witness deposition indicates that a Caucasian male,

a member outside the protected classes, was also allegedly improperly classified in F-

Level jobs rather than G-Level jobs. Def.'s Ex. 36 at 170:2–171:3, ECF No. 39-38.

Plaintiff may have been entitled to a different level job classification, as may have the

Caucasian male outside the protected class. However, a Title VII claim requires an

initial showing that the misclassification was due to discriminatory intent. Dugan, 394

F.3d at 722; Langerman, 155 F. Supp 2d at 495. Plaintiff has made no showing that

provides a dispute of material fact with respect to such a misclassification.

> 3. Plaintiff's claim that she was denied development training

Plaintiff also claims that she was discriminated against because "her position was

limited to clinical training although in her role she needed critical commercial and

Oncology Business Unit training related to her marketing responsibilities" and that "this

change in her training profile would provide training similar to that available to her male

counterparts with similar common core duties" but that her "training profile never

changed." Compl. ¶ 37.

An "adverse employment action," as required for Plaintiff's prima facie Title VII

claim, "is one that 'constitutes a significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d

321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761

(1998)); see also Gaines v. Baltimore Police Dep't., 657 F. Supp. 3d 708, 735 (D. Md.

2023). The plaintiff bears the burden of "show[ing] that her employer took an action that

adversely 'affect[ed] employment or alter[ed] the conditions of the workplace.'" Laird v.

Fairfax Cty., Virginia, 978 F.3d 887, 893 (4th Cir. 2020) (quoting Burlington Northern &

Santa Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006)).

Plaintiff has not provided facts or support that any adverse action was taken.

Instead, Plaintiff only alleges that she needed additional training modules on her profile

because they "related to her marketing responsibilities." Compl. ¶ 37. Plaintiff asserts

herself that her profile was never changed. Id. Therefore, Plaintiff has not met her prima

facia burden of showing a dispute of material fact for any adverse action because of

Defendant's inaction to provide additional training.

### 4. Plaintiff's claim that she was denied opportunities for promotion

Plaintiff further alleges that she was discriminated against for being denied

opportunities for promotion. Compl. ¶ 70. Plaintiff alleges that she was told by a

supervisor in July 2018 that she had an "'excellent outcome' in leading the team; and …

a promotion could be possible in October 2018; but he made no definitive promise in

that regard." Compl. ¶ 36. Plaintiff further claims that in January 2019, she "reminded

[the supervisor] about the promotion discussion, [and] he became angry and dismissive

of any discussion about a promotion." Compl. ¶ 39.

The Fourth Circuit has held that "being denied specific promotions could

potentially be discrete adverse actions" upon which to base a Title VII claim, but that

"only a few fleeting references to advancement or promotion … all of which are generic"

and that do not "articulate anything more than [a plaintiff's] vague, unsupported personal

belief" are insufficient. Walton, 33 F.4th at 173.

Here, Plaintiff's claim that she was discriminated against for being denied

opportunities for promotion are based on the single fleeting and generic reference that

her supervisor made in 2018. As such, Plaintiff has not met her prima facie burden or

provided a disputed material fact respecting the denial of a specific promotion.

5. <u>Plaintiff's claim that she was given less time to find a new position</u>

Plaintiff further alleges that she was discriminated against because she was "given less than 60 days' notice and given 60 days to find a new position, while at least one other similarly situated male employee was given at least six (6) months." Compl. ¶ 70. However, Plaintiff does not identify the "similarly situated male employee" who was given at least six months to find a new position. The record indicates that Plaintiff's four colleagues in the Commercial division were given the same <u>sixty-day</u> period to find a new position within the company, not six months. Def.'s Ex. 1 ¶ 46; Def.'s Ex. 27 at 192:6–193:11, ECF No. 39-29. Plaintiff has thus not met her prima facie burden.

**C.    Plaintiff's Retaliation Claims Fail.**

Plaintiff claims that AstraZeneca retaliated against her under the EPA, the FEPA, and Title VII. Plaintiff claims that she was retaliated against during the reorganization of the oncology business unit in 2019; that she was retaliated against because pay disparities were not corrected and she was not placed in the proper G-Level position; that she was retaliated against because the human resources department refused to properly investigate the Ethics Complaint; and that she was retaliated against by human resources employees through hostile treatment after the General Counsel Complaint. Compl. ¶¶ 85–108.

Under the EPA, it is unlawful "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). The requirements for retaliation claims are the same both under the EPA and

Title VII. <u>Darveau v. Detecon, Inc.</u>, 515 F.3d 334, 340 (4th Cir. 2008); <u>Reardon v. Herring</u>, 201 F. Supp. 3d 782, 784 (E.D. Va. 2016). To make a prima facie claim of retaliation, a plaintiff must show that: "(1) she engaged in a protected activity, (2) that the employer took a materially adverse action against her and (3) there is a causal connection between the protected activity and the adverse action." <u>Evans</u>, 936 F.3d at 195; <u>see also</u> <u>Burlington</u>, 548 U.S. at 61–68.

To satisfy the second element of suffering an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Evans</u>, 936 F.3d at 195 (quoting <u>Burlington</u>, 548 U.S. at 68). The plaintiff bears the burden of showing that the protected activity was the but-for cause of the retaliation. <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 242 (4th Cir. 2000). Retaliation is analyzed using the <u>McDonnell Douglas</u> three-step burden shifting framework where, if a plaintiff has made a prima facia showing, the burden shifts to the defendant to show that its purported retaliatory action was the result of a non-retaliatory reason. <u>Id</u>. at 248. The plaintiff must then rebut the employer's non-retaliatory explanation by demonstrating that the proffered nonretaliatory reasons were a mere pretext for discrimination. <u>Id</u>.

The Court therefore assesses each of Plaintiff's four retaliation claims under the <u>McDonnell Douglas</u> framework.

    1.  <u>Plaintiff's claim of retaliation for her General Counsel Complaint</u>

Plaintiff bases her retaliation claim on the fact that she was denied a position following a formal complaint to AstraZeneca's General Counsel chronicling her pay discrimination claims. Compl. ¶ 98. After Plaintiff lodged the Ethics Complaint in 2018, a reorganization took place and Plaintiff, along with everyone else in her team, was encouraged to seek other employment within the company. <u>Id</u>. ¶¶ 40–42. Following notice of the reorganization, Plaintiff sent the General Counsel Complaint to Defendant's General Counsel. Following the General Counsel Complaint, Plaintiff was not selected for the position for which she applied, Global Director of IO Project Management. Plaintiff claims that AstraZeneca prevented her from obtaining another position at the company, a materially adverse action, because of her General Counsel Complaint, which constitutes a protected activity. <u>Id</u>. ¶¶ 43, 98. However, Plaintiff has not shown that there was a causal connection between her making the General Counsel Complaint and her subsequently failing to secure a different position within the restructured AstraZeneca.

First, Plaintiff asserts that she applied for a different position at AstraZeneca for which she was well-qualified, and that AstraZeneca nonetheless hired a Caucasian male whom Plaintiff assesses to have been less qualified than her for the position. However, Plaintiff has offered no causal connection between the General Counsel Complaint and the hiring of the purportedly less-qualified candidate by the decisionmaker who made that hiring determination. Plaintiff has nowhere indicated that the hiring decisionmakers responsible for filling the position for which Plaintiff applied

were aware of the existence, much less the specific nature, of the Ethics Complaint or the General Counsel Complaint. Neither has Plaintiff alleged the identity of any individual decisionmaker whose knowledge of the General Counsel Complaint might be inferred based upon other salient facts alleged by the Plaintiff. In sum, Plaintiff has failed to allege that any decisionmaker responsible for hiring the allegedly less-qualified candidate for Plaintiff's desired position had knowledge of Plaintiff's protected activities and "a decisionmaker's knowledge of protected activity" is required proof of a retaliation claim. Roberts v. Glenn Industrial Group, Inc., 998 F.3d 111, 124 (4th Cir. 2021).

Plaintiff additionally attempts to show the connection by asserting that an HR employee did not allow Plaintiff's last day to be extended after being cc'd on an email showing the General Counsel Complaint. Compl. ¶¶ 58–59. Seeing a copy of the General Counsel Complaint does not provide an adequate but-for causation that the HR employee's knowledge of the complaint acted to prevent Plaintiff from finding alternative employment elsewhere at Defendant. As such, Plaintiff has not provided material facts in dispute such that survive summary judgment.

2.  Plaintiff's claim of retaliation for making a downward adjustment to her bonus

Plaintiff further claims that she suffered retaliation "when AstraZeneca made a downward adjustment to her bonus for 2017 to offset the adjustment to her base salary" after Plaintiff engaged in the protected activities of filing the Ethics Complaint discussing that her pay was unfairly lower than her male counterparts. Compl. ¶ 101. However, Plaintiff provides no facts to support this claim. To the contrary, the record indicates that Plaintiff's bonus was within the recommended bonus range. Def.'s Ex. 61. Further,

Civil Action No. 22-cv-03335-LWW                                      Page 26

Plaintiff does not provide any evidence that any alleged denial of the value of the bonus was done as a result of the Ethics Complaint. As such, summary judgment is warranted.

>   3. Plaintiff's claim that she was retaliated against because the human resources department refused to properly investigate her 2018 discrimination complaint and refused to correct the pay disparities within the complaint

Plaintiff additionally claims she was retaliated against when AstraZeneca "refused to correct the pay disparities [and] … refused to place her in the G pay band" after Plaintiff engaged in the protected activities of filing the Ethics Complaint discussing that her pay was unfairly lower than her male counterparts. Compl. ¶¶ 86–90. Similarly, Plaintiff claims that "AstraZeneca failed to properly investigate and address her 2018 Ethics complaint." Compl. ¶ 92.

As an initial matter, the "failure to investigate" is not an adverse action for purposes of retaliation. Broadway v. Univ. of Md., Global Campus, No. CV GLS 21-3226, 2023 WL 4421406, at *8 (D. Md. July 7, 2023); see also Yampierre v. Balt Police Dep't, No. CV ELH-21-1209, 2022 WL 3577268, at *37 (D. Md. Aug. 18, 2022) ("Broadly speaking, the failure to investigate an internal complaint cannot be considered retaliatory because it leaves an employee no worse off than before the complaint.") (internal quotations omitted). Similarly, a failure to act on a complaint is generally not a retaliatory or adverse action "because, in the typical retaliation claim, the plaintiff is complaining about an affirmative detriment following the exercise of a protected activity." Monn v. Gettysburg Area Sch. Dist., No. 12-CV-2085, 2013 WL 1345501, at *4–5 (M.D. Pa. Apr. 2, 2013) (internal quotations omitted), aff'd, 553 F. App'x. 120 (3d Cir. 2014) cert. denied, 574 U.S. 974 (2014). This is because an adverse action for

retaliation must <u>cause</u> a harm that is a "significant detriment." <u>Laird</u>, 978 F.3d at 888.

Plaintiffs would not be deterred to engage in making complaints because there would be

no further detriment by making them.

Further, the record indicates that AstraZeneca did investigate and address

Plaintiff's Ethics Complaint. An employee relations partner for Defendant interviewed

Plaintiff as part of the investigation and concluded that Plaintiff's hostile work retaliation

claim regarding one manager was partially substantiated and assigned the manager to

coaching with an HR representative. Def.'s Ex. 14 at AZ_BURNETT_000118,

AZ_BURNETT_000119, ECF No. 39-16; Def.'s Ex. 4 at 266:4–20, 198:5–19, ECF No.

39-6. Additionally, while AstraZeneca did not find that Plaintiff's pay equity or pay level

complaints were substantiated, the company did assign a compensation expert in

AstraZeneca's Global Rewards group to evaluate the concerns before making their

determination. Def.'s Ex. 1 ¶¶ 35–36; Def.'s Ex. 4 at 192:17–193:14, 201:2–21.

Therefore, summary judgment is granted for Plaintiff's retaliation claim for

refusing to investigate and failure to correct because the record does not provide a

dispute of material fact, and a failure to investigate is not an adverse action for

retaliation purposes.

    4. <u>Plaintiff's claim that she was retaliated against by human resources employees through hostile treatment after submitting the General Counsel Complaint</u>

Plaintiff finally claims that she suffered retaliation "by virtue of the dismissive and

hostile treatment of her by Human Resources, the very department tasked with

addressing employee concerns objectively, fairly and in a timely manner." Compl. ¶ 93.

Plaintiff claims that after submitting her General Counsel Complaint in September 2019 about her unaddressed Ethics Complaint discussing unequal pay and retaliation, one HR employee approached her workstation and stated, "you can speak … you know?" in "an antagonistic and hostile tone." Compl. ¶ 50. Plaintiff additionally contends that another HR employee escorted her out of the building on her final day of employment, November 4, 2019, informing her that "she had no right to be on campus and had been terminated effective October 31, 2019," which caused Plaintiff to feel "humiliated and embarrassed." Id. ¶¶ 58–59

While Plaintiff has established a plausible causal connection between the HR employee's comment and the General Counsel Complaint, she has not established that such a comment is a materially adverse fact. The Fourth Circuit has emphasized that a stray comment "is insufficient to establish a direct evidence [retaliation] claim." Johnson v. United Parcel Serv., Inc., 839 F. App'x 781, 783 (4th Cir. 2021). Such comments do not establish a prima facie claim of retaliation. Further, there is no causal connection between a protected activity of filing a complaint of unequal pay and an HR employee escorting that employee out of the building when the HR employee believed that Plaintiff was at the building after the date of her employment termination. Without a showing that the HR employee knew that Plaintiff was entitled to be in the building, it cannot be an adverse action.

Therefore, summary judgment is granted for AstraZeneca on Plaintiff's retaliation claims.

    **D.**    **Defendant's Statute of Limitations Expiration Claim Is Not Appropriate at This Stage.**

Defendants, AstraZeneca, argue that any potential liability under the EPA is time barred because of the two-year statute of limitations. 29 U.S.C. § 255(a) (non-willful violations have a 2-year statute of limitations). Plaintiff argues that the EPA's three-year statute of limitations applies because of willful violation. A willful violation occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [EPA] …." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). In determining the issue of the statute of limitations, the Fourth Circuit has provided that "in general, issues of fact bearing on the application of a statute of limitations are submitted … for determinations by the jury." Fowler v. Land Management Groupe, Inc., 978 F.2d 158, 162 (4th Cir. 1992). As such, the Court does not address the issue of fact bearing on the application of the statute of limitations because the Plaintiff was provided the opportunity to show material facts in dispute for all claims, none of which survived summary judgment.

**III.**    **Motion to Exclude Expert Witness**

Because summary judgment is granted for Defendant, the motion to exclude expert Plaintiff's witness is denied as moot.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Strike is **GRANTED**. Plaintiff's Motion to Extend the Deadline is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED**. Defendant's Motion to Exclude Expert is **DENIED** as moot.

Civil Action No. 22-cv-03335-LWW                                    Page 30

                                     /s/     Lisa W. Wang     
                                       Judge

Dated: December 9, 2024
       Greenbelt, Maryland